All rise and remain standing, please. The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the court is now sitting. God save the United States and this Honorable Court. You may be seated. Mr. Rothfeld. Thank you, Your Honor, and may it please the Court, I'm Charles Rothfeld, the Mayor Brown, representing the defendant, Cricket Communications. The federal jurisdiction exists in this case, so long as Cricket has shown that at least $5 million is in controversy. I think you're going to need to move that mic up a little bit closer. Okay. Is this okay, Your Honor? Federal jurisdiction exists in this case, so long as Cricket is able to show that at least $5 million is in controversy. So the question before the Court is whether Cricket has made that showing under a proper application of the preponderance of the evidence standard. The relevant facts of the record are very simply stated. The plaintiff, Mr. Scott, brought an action, a class action, on behalf of all Maryland citizens who purchased certain Cricket phones that are worth at least $200 apiece. Before the district court, Cricket introduced evidence showing that it sold more than 47,000 of these phones to Maryland residents, to Cricket customers in Maryland who had Maryland addresses on their Cricket accounts. And so if the Court does the math, it will see that so long as I'm very sorry, Counselor. If you could speak more directly into the mic, it would help me. I'm having a little trouble hearing your entire sentence. I'm sorry, Your Honor. And if this is not good enough, please let me know and I'll try to modify it. When you're close to the mic, it's fine. Okay. I think sometimes you just tend to move away a little bit. Okay. Thank you. Sure. And I will do my best, Your Honor, to stay in close proximity. Thank you. So again, the question is whether or not under a proper view of the record, under the prominence of the evidence standard, Cricket has made the showing that it has to do, that $5 million isn't controversy. Again, the parts of the record that bear on this question are very simply stated. The action was brought on behalf of all Maryland citizens who purchased these phones worth $200 apiece. More than 47,000 of these phones were sold to Maryland residents. And so if the court does the calculation, it will find that so long as slightly more than half of these Maryland residents are domiciled in the state, Cricket has made the showing it has to make. Those people are in Mr. Scott's class. More than $5 million would be in controversy. I think that the parties generally agree on some of the central points that govern this case. We agree that Cricket makes a showing under the preponderance of the evidence standard. I think we agree on what that means. Preponderance of the evidence means a showing that something is likelier than not. It is a 50% plus one standard. As the 11th Circuit has put it, preponderance of the evidence is not nuclear science. It doesn't require precisely targeted evidence. There is no suggestion that Cricket has to make a showing to a legal certainty. So long as Cricket shows that it is likely than not, 50% plus one, it prevails. And I think that the parties even agree on how the court is to make this determination. It should look at the record in the case. It should apply logical inferences to that record as guided by common sense and practical and judicial experience. And if the court does that, it should find that Cricket has made a showing. It is surely far likelier than not that slightly more than half of this large group of Maryland residents are domiciled in the State. And that is so for a couple of reasons. For one thing, the courts for centuries, including the Supreme Court, have applied consistently a presumption that domicile follows residence. And under this presumption, as applied by the courts, a showing of residence makes a prima facie showing of domicile until that is rebutted. And in this case, residence was established for each of these Maryland Cricket customers. It was not rebutted. That, we think, is dispositive. In addition, the presumption is really simply a judicial recognition of the common sense understanding that most people are domiciled where they reside. People, the definition of domicile is residence plus intent to stay. Most people intend to stay where they live. And that really follows from the more particularized definition of domicile. When an inquiry is made into the domicile of an individual person, courts look both to residence and to other things, most of which have some connection to physical location, to place of employment, to membership in social and religious organizations. All of those things are tied to where a person lives. And so the presumption follows logically, and it's a matter of experience and common sense from the standard that governs here. And so our submission is that Cricket, by showing residence of these thousands and thousands of people, has demonstrated that certainly slightly more than half of them are domiciled in the State, and if that is true, then Cricket prevails. Crucially here, Mr. Scott, the plaintiff, has provided absolutely nothing to rebut that showing. He has introduced no evidence showing that any of these residents are domiciled in other States. In fact, he's introduced no evidence of any kind at all. He's put nothing into the record of the factual nature. And he has failed even to offer a reasonable explanation of how it possibly could be that some very large number, that almost half of residents of Maryland are domiciled in other States, which is a highly improbable suggestion. And so without anything on that side of the equation, as I say, Cricket has introduced plausible, tangible evidence demonstrating the residence, and therefore, by presumption, the domicile of these people. Mr. Ruffield, excuse me, I'm sorry. As I understand part of the District Court's rationale in this case, the District Court judge essentially said that notwithstanding all these arguments, it was the plaintiff's right to tailor its complaint in such a way as to avoid the CAFA jurisdictional elements, and that there's nothing at all untoward or improper about that. What is your response to that? I have two responses to that, Your Honor. First, it is certainly true as a general matter that the plaintiff is the master of the complaint. But that doctrine has developed in the context in which plaintiffs are surrendering aspects of their claim. They're reducing the amount that they're requesting in order to fall below the amount in controversy limit. That is not what Mr. Scott is doing here. But by reducing the number of plaintiffs, the overall damage allegation has been reduced, no? That would be true. But I don't think he has reduced in any material way the number of plaintiffs in this case. I think it is absolutely clear as a matter of experience, common sense, the presumption that I mentioned, that almost all of these residents are citizens. And so ultimately, they will end up in Mr. Scott's class. So he is not surrendering any aspect of his claim. I think that Judge Diaz's question goes to the fact that he has delimited the extent of the class. If he's delimited the extent of the class, by definition, he's delimited the extent of the damage. But I think as a practical matter, the only real difference between a class that consists of state citizens and one that consists of state residents is that it's more difficult as a practical matter for the defendant to show that these people are in the class and therefore more difficult to make a showing of federal jurisdiction. And that, I think, is precisely what Congress in CAFRA was attempting to avoid. I don't think you're exactly addressing his question, or maybe you are and I didn't understand his question. So let me try my question. I'm sorry. I think we know from Vaden that a plaintiff is the master of the complaint and can carve out a subset of what might otherwise be a broader class. It could be everyone in contiguous, it can include people in contiguous states as well, therefore bringing to bear a far greater leverage with respect to the potential amount of damages than would exist with this more narrowly circumscribed class. So what is it that prohibits, specifically prohibits the plaintiff from narrowing down to a subset of Maryland citizens who meet the parameters of the class as it's defined here? Let me give a couple of responses to that, Your Honor. First, I'm not sure that anything would prevent the plaintiff from actually excluding people from the class. It did. I mean, it excluded by circumscribing, correct? Well, I don't think that it did, Your Honor. Maryland citizens who between July 12th, 2013 and March 13th, 2014, it has excluded quite a few people, has it not? It's not a trick question. I just don't quite understand why we're, why there's a question about the plaintiff's ability to define a class narrowly enough as the plaintiff has done here. But we are not objecting, and let me try to make this clear, Your Honor. We're not objecting to a plaintiff excluding people from the class. Our objection is, and we're not objecting really to anything about the nature of the class definition. We're simply talking about how do we prove these people who are in the class, the class is Maryland residents. The class is Maryland citizens. Our evidence relates to Maryland residents, and we are saying that by showing the residency of these people, we are demonstrating by preponderance of the evidence that they are in the class, that they are citizens of the class. So we are not saying that in that sense the plaintiff has not mastered the complaint. We are saying that. So you're acknowledging that a plaintiff can confine a class sufficiently narrowly to a state cap? If the plaintiff excluded people from the class and... Could you work with my question, perhaps? I thought that, I'm sorry, Your Honor, I'm trying to answer your question. If, yes, my understanding of your question, tell me if I misunderstand it, is could a plaintiff exclude people from the class in such a way that it fell below the amount in controversy requirement? And our answer is, yes, it could do that. You're saying it just hasn't done so here. Absolutely. That's exactly what we're... Tell me about, talk to me about, for instance, college students. Would a college student be a citizen? Perhaps and perhaps not. But our suggestion is, we acknowledge that as a general matter, there are going to be some people who are residents of the state who are not domiciled there. There is a presumption as to any individual that once the showing of residence is made, burden shifts to the other side to show that, in fact, that presumption does not apply. But we think as a matter of common sense experience, vast majority of people in a state are not college students. They're not members of the military. They're not law clerks to federal judges. Would the same presumption apply with respect to mailing addresses? Wouldn't that be also, wouldn't that also give rise to the same presumption that you seek to avail yourself of? I think it would, Your Honor, and courts have said that. We've cited some of these in our brief, pages 25 of our opening brief. And I think that, in fact, mailing addresses are very closely related to place of residence. They're billing addresses. Didn't the Seventh Circuit reject an argument that an assumption based on phone numbers in mailing addresses was sufficient? It did, Your Honor. In fact, I can answer that question in reserve of the balance of my time. In the Sprint Next Tell case, which is what you're referring to, the court did reach that conclusion. We think, first of all, the dispositive consideration in Sprint Next Tell and cases like it is that it rose in a decisively different context from our case. Our case, of course, involves jurisdiction. Sprint Next Tell involved an attempt to assert an exception to CAFA, to remand a case, to defeat federal jurisdiction, remand a case to state court. And the Congress made absolutely clear in Congress, in CAFA, that federal jurisdiction is favored and remand to state court is strongly disfavored. We think that explains that the outcome in cases like Sprint Next Tell and like it. I should add — Do we also have the burden here as the party seeking to invoke CAFA jurisdiction? We do. And I think we've — we introduced evidence to satisfy that burden. As I said, the other side introduced no evidence to respond to it. They don't have the burden. That's correct. But once we — under the preponderance standard, the 50 percent plus one standard, we, having introduced probative evidence that makes our showing, I think that the other side cannot stay in mute. I think it has to say that there's something wrong with our evidence to undercut it. Just to follow up on your question about Sprint Next Tell, Your Honor, I should note that there is a conflict in the circuits on whether Sprint Next Tell is correctly decided. The Sixth Circuit in the Mason case that's discussed in the briefs rejected the holding of Sprint Next Tell. Many other cases that we cite in our reply brief in footnote two have come to the same conclusion, even in the CAFA exception context. And we think that demonstrates just how powerful the presumption is that domicile follows residence. And, Your Honor, if I may reserve the balance of my time. Absolutely. Great. Thank you so much, Your Honor. Thank you. Ms. Carney. Thank you, Your Honors. Good morning. May it please the Court. The District Court's order should be affirmed and the appeal denied because Cricket failed to allege federal jurisdiction in its notice of removal. Cricket did not prove federal jurisdiction when the allegations in its notice of removal were challenged. Cricket removed a case where federal law prohibits jurisdiction under the Magnuson Moss Warranty Act. And federal law also mandates denial of this appeal because more than 60 days have passed since the appeal was filed. And Cricket told this Court that no expedited disposition was necessary. And so I'll begin with the argument that Cricket did not allege federal jurisdiction in the first place. Under this Court's decision in Ellenberg and the Supreme Court's decision in Dart, Cherokee, plausible facts must be alleged showing jurisdiction. And under the Twombly and Iqbal standards, that requires not just conclusions. It requires actual facts. It's also important to remember that jurisdiction is fixed at the time that the notice of removal is filed. And that's something that is contemplated by CAFA. It's also reflected by this Court's decision in the Dennison case. Once, and CAFA jurisdiction is the only thing that's argued in this appeal. That requires 100 class members, and it requires $5 million in controversy. Cricket admits that in order to show the amount in controversy part of that equation, it has to show that there are 25,000 people in the class. But Cricket didn't allege any facts about this class, about the class that was alleged by Mr. Scott. Cricket alleged facts about some different class. And the allegations that Cricket made in its notice of removal failed to match the class definition in at least five ways. First, Cricket's allegations relate to facts about a period that ended 20 months before the notice of removal was filed. Let me ask you about that. So under your theory, in 20 months there would have had to have been literally a wholesale exodus of people from the state of Maryland to just leave en masse. Is that reasonable? Well, I don't think that that's the necessary conclusion from that. And this is why. Because the facts that Cricket alleged don't relate to the number of people who purchased phones. It also doesn't show the number of residents of Maryland. The facts that Cricket alleged, I mean, initially in its notice of removal, Cricket simply alleged that there were 50,000 phones that were activated in and shipped to Maryland. That doesn't say anything about the number of people who purchased the phones. It could have been that there were thousands of phones that were shipped to a corporation. Thousands of phones that were shipped to a Cricket reseller. We don't know. There's nothing in the record that indicates where the phones were shipped. And it's frankly curious that, you know, Cricket AT&T would have rested its allegations on such vague and opaque statements. That there were 50,000 phones activated in and shipped to Maryland. If there were, if, you know, Cricket had some information about the residents. So that was the initial allegation, but wasn't that then changed? Yes. The allegation was then changed to say that there were several thousand fewer phones, that there was an affidavit that was submitted to say that there were several thousand fewer phones shipped to customers. Again, the number of customers is not identified. There's no identity of the number of customers. It says 47,000 some phones were shipped to customers who listed an address in Maryland. Now again, there's no indication of how many of those customers would be individuals. How many would be corporations? It could be, again, that those phones were shipped to a Cricket reseller. They were shipped to Walmart. I don't know who. But whether it's shipped to an individual or a corporation also makes a difference in the citizenship analysis. Makes a difference in the residency analysis too, but that's really not relevant here. But a corporation is going to be a citizen under CAFA of the place where it's principally organized or where it principally conducts business. We don't have any idea from the record how many phones were shipped to corporations, how many phones were shipped to people, or how many people purchased phones at all. Is the allegation that they were shipped to different addresses or just to an address? I believe that the allegation is that they were shipped to a Maryland address.  There is no indication of any number of addresses to which these phones were shipped. I apologize, Your Honor. I thought that I had this barn. But there is no, I will find the allegation in the notice of, in the affidavit in support of the opposition to the motion to remand. And that does not indicate a specific number of addresses. Well, in response to that, your colleague says, you know, this is a preponderance of the evidence standard, 50% plus 1. Why isn't it reasonable to infer that, or unlikely to infer that all of these phones were shipped to one or two addresses? And couldn't that all be sorted out later in discovery? Well, the problem is, Your Honor, that we don't know where the phones were shipped. The preponderance of the evidence standard requires some evidence. And so here where we have a class that is being substituted in as the plaintiff for the purposes of diversity jurisdiction. So there is an entity that stands in the place of the plaintiff. The defendant has to show that this plaintiff has a specific amount in controversy. I think the question is, how specific does the showing have to be? And what Cricket has come forward with is a ballpark from which a presumption would flow that these were sent to Maryland residents. It is likely that these are Maryland citizens slash domiciliaries. And the question, it seems somewhat intuitive when you look at it, that this would be a fairly specific case. This is a fairly sizable class. And the question is just, how much does Cricket have to show? And if it's the 51 percent, if it's the preponderance standard, why doesn't this meet the preponderance standard? It doesn't meet the preponderance standard, Your Honor, because it doesn't necessarily go to the party, to the plaintiff class. It talks about, it's information that could relate to a wholly different group of people. And, for example We know that it's Maryland. We know that these are phones that were shipped to Maryland and that there were addresses that were listed on the accounts that are in Maryland. But, again, we don't know what kind of addresses those are, whether those are corporate addresses, billing addresses, residential addresses. And it's not, there is not evidence of residence that's provided by Cricket. It's only the addresses, addresses of cell phone customers that are not even billing addresses. And billing addresses are what the Court in the Sprint-Nextel case rejected as evidence of citizenship under CAFA. And here, and there's a reason for that. So, for example, Mr. Scott, the named plaintiff, the only one, you know, whose citizenship is not in question, he's a Maryland citizen, Cricket agrees, we agree. His phone was shipped to an address in New York. So the idea that this somehow bears on the calculus here, I think, is illustrated by that, that that's not the case. And so... So what would your class look like, citizens? What would it look like? The class would be people who have a domicile in Maryland and who... They live in Maryland. Who live in Maryland, who intend to stay in Maryland, who satisfy the requirements of Maryland citizenship, and who purchase the specific phones that are challenged in this case. There's a specific kind of obsolete phone that Cricket sold to people in Maryland who are Maryland citizens. That Cricket sold to Maryland citizens, not necessarily in Maryland. I think the concern is, one, we don't want to undermine the presumption of federal jurisdiction under CAFA. That's sort of a broad view I think Congress wanted to do. The other is, you don't want the line to be so porous. Line between citizen and people who were shipped to and activated be so porous that you can understate and defend against Cricket now in terms of saying that, you know, this is not proper. But then it's so porous that when it's time for your class to develop in a case, well, yeah, these people are there. Because that's to your benefit then. You know what I'm saying? So that line, you don't want it so blurry that you can stand firm now on one, but then later say, well, you know, they lived there. You know what I'm saying? I do. And so I would say one thing in response to that is that CAFA expressly contemplates the determination of citizenship as something that has to take place in the context of determining whether its jurisdictional requirements are satisfied. And 1332D7 says that citizenship shall be determined for the purposes of, among other things, deciding whether there are 100 people in the class and deciding whether there's $5 million in controversy. How might that be done, counsel? Isn't the presumption that, and I know I'm going to get this backwards, that citizenship follows residence. Was I moving in the right direction? Because it is so difficult to tell whether or not, how do you tell, for instance, whether a person intends to remain in Maryland? What sort of proffer would you have Cricket make that would meet your definition of the preponderance? Well, for example, I believe that the Sprint Nextel case referred to specific kinds of evidence that would allow a person to remain in Maryland. That could be used to show citizenship. You know, you could just answer the question without reference to Sprint Nextel and then refer back. I'm just asking, on these, you were critiquing Appellant's argument by saying that it wasn't tailored to this class. So tailored to this class, what kinds of things would Cricket, could Cricket proffer that would meet its standard? Well, I think that evidence that related, again, specifically to the people who purchased the obsolete phones at issue, information such as their intent to remain in the State of Maryland. What would be shown? That's precisely my question. What would be proffered to show intent to remain? It's really, I'm really not asking trick questions here. I'm just asking what would Cricket need to proffer to show intent to remain? Well, I'm working from a position where I don't know very much information. I don't know what information Cricket has. Presumably you know what your class is. Yes, Your Honor. And so in order to prove citizenship, one of the things that would be required could relate to the State where their vehicles are registered, where they have registered to vote, where they have a driver's license. So it would be, to meet its burden, Cricket would need to come forward with a proffer that a number, a sufficient number of the people in the class, the totality of the class are registered to vote, own vehicles. That they're registered to vote, that they own vehicles, they have the intention to remain in the State of Maryland. And that's something that can be done through interviews with class members. That's something that class members can state. Surely not on the magnitude that would be required, though. Well, it could be done. I'm sorry, Your Honor. So I'm asking at this stage, at the threshold stage where we are, what in your view would Cricket need to show? You're saying voting records and driver's license. Vehicle registration, I guess. Driver's license, vehicle registrations. I believe that the intention of class members is important, and that's something that can be done on a statistical basis. And that is, again, where I was referring to the Sprint Nextel case, that statistical information can be used. What is the statistical sampling that you would think would be appropriate? Let's say you've got 47,000 addresses of shipping. And how many, let's say it took 100 people, found out that of that 180% of them voted in the State of Maryland, had the driver's license in, extrapolate from that number. Would that be appropriate? I am not a statistical expert, and so I'm not sure. You went to college, you know, you had some form of statistics, one or the other. I mean, it's not a trick question like Judge Duncan said. Don't you think that would be, because I listened to your answer to Judge Duncan's question, that is the things there. Obviously, they wouldn't have to interview all 47,000 and see how many left. But there must be some statistical significant sampling pool where you could say 1,000 were interviewed, and could you mention interviewed. You found these indicia of citizenship. Then extrapolate from that how many of the 47,000 must be citizens. Would that be appropriate? I think that that would be, that size of a sample would likely be appropriate. Again, just from where I stand. And I think that that would be possible and something that could have been done under Sprint Nextel. Now, at this point, it hasn't been done. Cricket chose to not present evidence related to the class that was pled in the complaint. Is there a deadline by which the notice has to be filed in these cases? The notice of removal has to be filed within 30 days from the time that they You would have Cricket conduct these thousands of interviews within a 30-day period? Well, I think that there's likely information that Cricket has that it simply didn't provide to the court. I think you're assuming a little bit too much about the customer relationship between Cricket and its individual customers. I doubt very seriously that they're asking people for voter identification rolls and driver's licenses and registrations. Well, I don't know what Cricket has, unfortunately, and neither does the district court. But what we do know is that Cricket told the district court that it didn't have information that could prove citizenship. And we're asking, I think the question illustrates a concern about the level of the burden that you would pose at this stage within the 30 days that are available to Cricket. And so far, it doesn't seem to me necessarily within the realm of feasibility that Cricket or any retail operation, for example, I would certainly hope that Walmart doesn't know anything about my voter registration and my vehicle registration, would be able to produce it. Well, there is a saving provision in CAFA that would address it. If it were the case that Cricket did not know how many people, did not have, did not know that the, did not know the facts that established CAFA jurisdiction, then it can file a notice of removal within 30 days from getting notice of those facts. I mean, that's, and there's not the year restriction on removal that there is under the general diversity removal statute. So if it were the case that Cricket really didn't have any information from which it could show that CAFA jurisdiction was proper here, it has an unlimited, under CAFA, it has the right to remove down the line. So there's not the restriction under the general diversity removal statute that any notice of removal has to be filed within one year from the date of the filing of the complaint. I would also, I see that my time is running short. I would point out to your honors that Cricket relies heavily on the Mason case out of the Sixth Circuit. And counsel indicated that there's a split in the circuits. There are six circuits who have found that information about residency cannot be used to prove citizenship under CAFA. There's the Mason case, which relied on rejecting this Court's decision in the Advance America case as the basis for its holding. And so that would conflict with the prior panel rule. But even beyond that, Mason is distinguishable. That case involved the Flint crisis with lead in the water. That was an inherently residential class. Those are people who live there, and the class was specifically limited to people who had lived there for several years. So Mason involves people who have been victimized by lead in their water pipes. They're obviously in Flint. They're obviously there. Here we have an inherently transitory, facts about an inherently transitory group of people. Cricket, the Braza case out in California noted that Cricket is a, advertises itself to be a no-contract provider that's prepaid. And Judge Duncan, your question about college students I think is particularly apposite in that circumstance. We don't have any common sense inferences or practical experience, at least I don't, about what Cricket customers do. And I think that's where any kind of presumptions have to flow from. It's not about the citizenry at large. It's about Cricket's customers, and Cricket's customers are people who get prepaid, no-contract phones. And I think that college students are likely to be, you know, a large number of those people. And drug dealers. I don't know. I do know that there are a lot of people who want to have phones that are not, don't have a contract. And people who may have, you know, troubled pasts in terms of credit history. These may be more transitory people. I think that that's relevant. I would also say. There is no pending question. Your light has been red for a while. Thank you, Your Honor. Just a few quick points, Your Honor. First, on the question of who is the subject of the evidence that Cricket has put into the record, it appears at page 77 of the joint appendix, and it includes Cricket customers who listed addresses in Maryland on their Cricket accounts during that period. So we're not talking about resellers of Cricket phones. These are people who have Cricket accounts living in Maryland. In your few minutes, could you also just briefly touch on the relationship between CAFA and Magnus & Moss? Certainly, Your Honor. I didn't mean to interrupt. I just want you to throw that in there. Okay. If I can conclude with that, I'll be happy to do that. There is no question that we are talking here about Maryland residents. Are we talking about distinct addresses, or do you know that much? All that we know from the record is customers who listed addresses located in Maryland, so I think that is distinct addresses. We're talking about separate addresses, not a single address for purchase of all 47,000 phones. You're making an inference about that, but you don't really say that explicitly. That's true. I'm making an inference from that. I should add, insofar as there were multiple purchases made by an individual or even made by a corporation, those would count towards the amount in controversy because those would be people who are in the class. So if I purchase one phone, three phones, seven phones, it doesn't make any difference for our purposes because all we're trying to do is establish the amount in controversy. We don't have to establish citizenship to establish diversity for any other CAFA purpose. This is simply a way of getting at the amount of controversy in the case. Second, Judge Gregory addressed the porous nature of the claims that are being made by the plaintiffs that they are saying we have not made a sufficient showing of citizenship and then they will come back and say they have made a sufficient showing. I think that is exactly right. It is notable that the plaintiffs have never disavowed. They've never said there is in fact less than $5 million in controversy. They've never said that any significant number of these people that we've identified as being Maryland residents are not citizens of the State. And so I think they are playing kind of a gotcha game here. They're saying it's hard for us to make our showing, but once we are federal jurisdictions defeated, they will then make their showing in State court. Third, Judges Duncan and Diaz noted the difficulty of making the kind of showing that the district court required in this case. The district court said for Cricket to make its showing, it would have to make thousands of individualized demonstrations as to the domicile of the Cricket customers, and that would involve a hugely burdensome enterprise on Cricket's part. It would involve massive invasions of privacy of Cricket's customers. As a practical matter, it simply would not be possible. And I think if that is what required, it would make CAFA removal impossible in a situation like this and would directly undercut the policies that Congress intended when it enacted CAFA. And now to address Judge Duncan's question about Magnuson Moss, it's impossible for the language of both Magnuson Moss and CAFA to be implemented. CAFA obviously is the more recently enacted statute, and so I think that it takes precedence. Moreover, and of particular importance, when Congress enacted CAFA, it specifically accepted certain types of claims that could be brought into State courts. For example, securities claims under the 33 Act, which could be brought into State court, and Congress said those are not covered expressly. It said in CAFA are excluded from CAFA. The circuits that have considered it concluded that CAFA is an alternative basis, that the two, a plaintiff can either satisfy the jurisdictional requirements of MMWA or CAFA? I think that they have said that it's, if a plaintiff brings a clause to action that satisfies the Federal jurisdictional standards under Magnuson Moss, it can do that. If it doesn't do that, I think that they recognize that defendants have the right to remove under CAFA as an alternative jurisdictional basis, that is correct. Three circuits have addressed the issue now. All of them have found that CAFA jurisdiction can be asserted in Magnuson Moss claims. More than a dozen district courts have reached the same conclusion. So I think this Court would be creating a circuit conflict and certainly I think would be departing dramatically from the clear intent of Congress, because Congress, as I say, excluded particular claims from CAFA, did not exclude Magnuson Moss. Your Honor, if there are no further questions. Thank you. Great. Thank you. We'll come down to brief counsel and then proceed to our next case.
judges: Roger L. Gregory, Allyson K. Duncan, Albert Diaz